UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DIANA TRAN,<br><br>              Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>              Defendant. | CASE NO. 2:15-cv-01311 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkts. 11, 12, 13).

After considering and reviewing the record, the Court concludes that the ALJ erred when she failed to provide specific and legitimate reasons supported by substantial evidence for giving no weight to the medical opinion of Dr. Robert Parker. The record

demonstrates that Dr. Parker did not base his opinion of plaintiff's limitations on self-reported symptoms. Rather, Dr. Parker explained the bases for his conclusions and indicated reliance upon plaintiff's mental status examination, which demonstrated the objective bases for his opinion regarding plaintiff's limitations. Had the ALJ properly considered Dr. Parker's opinion, the residual functional capacity may have included additional limitations.

Because this error is not harmless, this matter is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, DIANA TRAN, was born in 1956 and was 56 years old on the amended alleged date of disability onset of September 14, 2012 (*see* AR. 40, 172-81). Plaintiff does not speak English and is illiterate (AR. 40). Plaintiff has past work experience as a boat cleaner, cook and kitchen help (AR. 194-202). Plaintiff last worked as a cook in a restaurant but after a two week trial period she was laid off because she could not perform the work (AR. 42-44).

According to the ALJ, plaintiff has at least the severe impairments of "affective disorder, anxiety disorder (20 CFR 416.920(c))" (AR. 21).

At the time of the hearing, plaintiff was either divorced or separated from her husband and living alone (AR. 41-42, 173).

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 75-86, 88-100). Plaintiff's requested hearing was held before Administrative Law Judge Laura Valente ("the ALJ") on November 7, 2013 (*see* AR. 36-73). On February 28, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 15-35).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) Whether or not the ALJ erred in finding that the plaintiff's past relevant work cleaning shrimp boats was at a light exertional level, and concluding she was capable of performing that work; (2) Whether or not the ALJ erred in failing to properly consider the opinions of the treating and examining providers in the record and further erred in failing to provide adequate explanation for not according these opinions greater weight; (3) Whether or not substantial evidence supports the ALJ's conclusion that the plaintiff had no "severe" physical impairments or limitations and the residual functional capacity to perform a full range of work at all exertional levels with sufficient concentration to understand, remember and carry out simple, repetitive tasks, no restriction on the ability to interact with coworkers and supervisors and the ability to perform work that included superficial and occasional contact with the public; and (4) Whether or not the ALJ erred in failing to provide legitimate reasons supported by the record for her finding on credibility (*see* Dkt. 11, pp. 1-2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1)   Whether the ALJ gave specific and legitimate reasons for rejecting the limitations assessed by psychologist Robert Parker, Ph.D.**

Plaintiff contends that the ALJ erred in evaluating the medical opinion of Robert Parker, Ph.D. because the ALJ improperly found that Dr. Parker's opinion was (1) based on self-reports and (2) inconsistent with plaintiff's activities of daily living (*see* Opening Brief, Dkt. 11, pp. 9-10).

Dr. Parker performed a Psychological/Psychiatric Evaluation, including a Mental Status Examination ("MSE"), on July 10, 2012 (*see* AR. 279-91). Based on his examination, Dr. Parker found that plaintiff's symptoms impacted her ability to work in the following ways: inability to stay focused; some problems following directions; forgetfulness; problems initiating/completing tasks; slow performance; poor stress tolerance; and poor coping (*see* AR. 280). Dr. Parker further assessed plaintiff as having minimal ability to handle activities of daily living beyond basic survival needs and as having a very poor prognosis to engage in gainful employment (*see* AR. 281).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, the ALJ gave Dr. Parker's opinion no weight, explaining:

> In the opinion of [Robert] Parker, Ph.D., offered for the purposes of maintaining State benefits, the claimant has an inability to stay focused, has some problems with following directions, forgetfulness, initiating or completing tasks, poor stress intolerance, poor coping skills, and slow performance. She is able to participate in treatment therapy and her conditions are expected to last between one and two years. Dr. Parker's opinions are not consistent with or supported by the evidence of record, including the longitudinal record that does not indicate any cognitive problems and the claimant's reported activities of daily living. For example, the longitudinal record shows that the claimant received mental health services, but did not follow through with provider recommendations to seek counseling until September 2013, just over one month before her disability hearing. The longitudinal record also reveals that the claimant was not compliant with her psychiatric medication, not due to a cognitive issue, but rather due to her preferences. The claimant's activities of daily living also show that she is able to perform tasks on a consistent and sustained basis. Further, Dr. Parker did not have the opportunity to review records and [his] opinions rely heavily on the claimant's subjective complaints. There are also no psychological opinions from any treating sources available in the record. For all of these reasons, Dr. Parker's opinions are given no weight.

(AR. 30 (internal citations omitted)). None of these reasons is supported by substantial evidence in the record.

First, Dr. Parker's report is based, in part, on the MSE, which is not subjective. The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [ ] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra,* The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

When an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick*, *supra*, 157 F.3d at 725 (citing *Embrey*, *supra*, 849 F.2d at 421-22); *see also Blankenship v. Bowen*, 874 F.2d

ORDER ON PLAINTIFF'S COMPLAINT - 6

1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (quoting *Poulin v. Bowen,* 817 F.2d 865, 873-74 (D.C.Cir. 1987) (quoting *Lebus v. Harris,* 526 F.Supp. 56, 60 (N.D.Cal. 1981))); *Schmidt v. Sullivan,* 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

Also, according to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r. Soc. Sec. Admin.,* 169 F.3d 595, 602 (9th Cir. 1999) (citing *Fair v. Bowen,* 885 F.2d 597, 605 (9th Cir. 1989))). However, according to the Ninth Circuit, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin,* 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

Here, Dr. Parker performed an extensive and thorough MSE, charting a number of results (*see* AR. 281-91). He noted that plaintiff's mood was depressed, discouraged, and tearful and that plaintiff was nervous, tense, fearful, and worried (*see* AR. 281). He observed that she demonstrated a restricted affect (*see id.*). Regarding evidence of malingering, Dr. Parker noted that plaintiff appeared "straightforward, honest, disclosing and generally consistent" (*id.*). Regarding the effect of plaintiff's symptoms on her ability to work, Dr. Parker opined that plaintiff has an inability to stay focused, has some problems following directions, is forgetful, has problems initiating/completing tasks, has slow performance, poor stress tolerance, and poor coping (*see* AR. 280). He rated her delayed recall as "poor," noting that she was unable to recall any words after a delay (*see* AR. 282).

During her MSE, Dr. Parker also noted that her fund of knowledge was poor, and that she demonstrated poor concentration by only being able to recall 3 digits backwards and 2 digits forward on the digit span test (*see id.*). He assessed her judgment as poor (*see id.*). Regarding plaintiff's performance on the Trails A test, plaintiff completed it in 83 seconds, putting her below the 10th percentile. Dr. Parker opined that plaintiff's Trails A test result suggested that plaintiff was impaired in her "ability to follow instructions and perform a complex cognitive task" (AR. 283).

The record demonstrates that Dr. Parker provided sufficient explanation of the evidence relied upon in forming his opinion and that Dr. Parker did not base his opinion of plaintiff's limitations largely on self-reported symptoms. Rather, Dr. Parker provided a medical source statement that was based on the doctor's observations, the objective

results of the MSE, and plaintiff's self-reported symptoms. Thus, the ALJ's finding that the doctor's assessment relied heavily on the claimant's subjective complaints is not supported by substantial evidence in the record as a whole.

Second, according to the Ninth Circuit, "where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusion." *Nguyen, supra,* 100 F.3d at 1465. In this case, the ALJ found that Dr. Parker's opinion is inconsistent with the longitudinal record (*see* AR. 30). To support her finding, the ALJ suggested that Dr. Parker's opinion is inconsistent with the medical records indicating no cognitive problems, but the ALJ did not cite to the record to support this finding (*see* AR. 30).

Regardless of the lack of specificity, the record does not support this finding. Within the treatment notes, other medical sources documented that plaintiff was fatigued (*see* AR. 258), anxious (*see* AR. 262), and would struggle with employment due to mental illness (*see* AR. 266). In addition, plaintiff was repeatedly diagnosed with depression (*see* AR. 259, 261, 264). The Court also notes that the ALJ's finding that the records indicate no cognitive problems is contradicted by plaintiff's MSE results discussed above, which demonstrate multiple cognitive problems, including problems with memory, concentration and the ability to follow instructions, *see supra*. Similarly, examining doctor, Dr. David Widland, Ph.D., also opined that plaintiff suffered from cognitive limitations (*see* AR. 266). He observed that plaintiff "was unable to repeat 1/3 objects after a five minute lapse" and opined that plaintiff "would likely require additional supervision to consistently perform routine tasks" and "would likely struggle

ORDER ON PLAINTIFF'S COMPLAINT - 9

with task completion" (*see id.*). Thus, the ALJ's finding of inconsistency with the medical record is not a specific and legitimate reason supported by substantial evidence in the record as a whole for rejecting the opinion of Dr. Parker.

The ALJ offered three additional reasons to afford Dr. Parker's opinion no weight, including: (1) finding Dr. Parker's opinion inconsistent with plaintiff's activities of daily living; (2) noting that Dr. Parker did not review other treatment records; and (3) noting that plaintiff was not compliant with medication (*see* AR. 30). First, Plaintiff's reported activities of daily living include waking up, lying in bed, watching television, making food, shopping, paying bills, and sleeping (*see* AR. 242, 244). Thus, it is unclear to the Court how plaintiff's activities of daily living are inconsistent with Dr. Parker's opinion that the plaintiff "appears to have minimal ability to handle daily activities beyond basic survival needs" (AR. 281).

It is similarly unclear why the ALJ afforded Dr. Parker's opinion no weight simply because he did not review other records and because plaintiff was not compliant with medication. Even if Dr. Parker did not review other records, he still was an examining doctor who was able to rely on his own clinical observations. Similarly, that plaintiff did not comply with prescribed medication does not negate Dr. Parker's clinical findings or observations. Relatedly, the Court also notes that it does not appear that the ALJ evaluated the legitimacy of plaintiff's reason noted in the record for ceasing her anti-depression medication, that is, that "she was afraid to be addicted to chronic meds" (AR. 260). *See* 20 C.F.R. § 404.1530 (a good reason can provide a valid excuse for not following prescribed treatment, such as that the "treatment . . . . is very risky for

you"); *see also* SSR 96-7 1996 SSR LEXIS 4 at *21-*22. The Court concludes that these other reasons for rejecting Dr. Parker's opinion also are not specific and legitimate reasons supported by substantial evidence in the record as a whole.

Defendant offers additional reasons for why the ALJ may have failed to credit fully the opinion of Dr. Parker (Dkt. 12, pp. 11-12). For example, defendant suggests that Dr. Parker's findings are inconsistent with Plaintiff's ability to count change and pass a test to read street signs in English (Dkt. 12, p. 11). Defendant also suggests that plaintiff's activities of daily living reported to Dr. Parker were more restricted than those reported elsewhere (Dkt. 12, p. 11). According to the Ninth Circuit, however, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (citing *Chenery Corp, supra*, 332 U.S. at 196). Here, the Court declines to entertain any post hoc rationalizations that attempt to intuit what the ALJ may have been thinking when she accorded no weight to Dr. Parker's medical opinion.

Finally, the Court notes that the ALJ implies that medical source opinions were somehow less persuasive when the examinations were sought for the purpose of obtaining or maintaining benefits (*see* AR. 29-30). However, the "purpose for which

medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, *supra,* 81 F.3d at 832. Accordingly, the Court concludes that according limited or no weight to a medical report because it was obtained for purposes of qualifying for benefits is not a specific and legitimate reason to reject a medical source opinion.

The Court also concludes that the error in the evaluation of Dr. Parker's opinion is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56). In *Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)). Here, because the ALJ improperly disregarded the opinion of Dr. Parker in forming the RFC and plaintiff was found to be capable of performing past relevant work based on that RFC, the error affected the ultimate disability determination and is not harmless.

ORDER ON PLAINTIFF'S COMPLAINT - 12

**(2) Whether this matter should be reversed and remanded for an award of benefits or for further administrative proceedings.**

Plaintiff contends that this matter should be reversed and remanded with a direction to award benefits, or in the alternative, for further administrative proceedings (*see* Dkt. 11, p. 18).

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen*, 80 F.3d at 1292). An award of benefits is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292). Here, outstanding issues must be resolved. *See Smolen,* 80 F.3d at 1292. Here, the outstanding issue is whether or not a vocational expert may still find an ability to perform past relevant work or find that plaintiff has the ability to perform other work if the improperly discredited

evidence is credited in full. Accordingly, remand for further consideration is warranted in this matter.

### (3) Whether the ALJ erred when evaluating plaintiff's credibility.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, sections 1 and 2. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

### (4) Whether the ALJ erred when classifying plaintiff's past relevant work as light work.

The Court notes plaintiff's argument that the ALJ's classification of plaintiff's past relevant work contradicts plaintiff's testimony provided under oath at her hearing, which the ALJ instructed the vocational expert to disregard (*see* Dkt. 11, pp. 3-6). However, the Court also notes that the ALJ's finding is consistent with the information provided on plaintiff's work history form. Plaintiff contends that the evidence of record demonstrates that she did not understand this form, while, in contrast, she testified at her hearing with the assistance of an interpreter. The ALJ should resolve the inconsistency following remand of this matter, with clarification from plaintiff's previous employer if necessary.

**(5) Whether the ALJ erred when finding that plaintiff did not suffer from any severe physical impairments.**

As noted, the Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, sections 1 and 2. For the reasons stated, and based on the record as a whole, the Court concludes that all of the medical evidence should be evaluated anew following remand of this matter.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 27th day of May, 2016.

J. Richard Creatura
United States Magistrate Judge